MD

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Joseph Benge, | No. CV 14-0402-PHX-DGC (BSB) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Robert Joseph Benge, who is incarcerated in the Arizona State Prison Complex-Lewis ("ASPC-Lewis"), brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 1). Thereafter, Plaintiff filed a "Motion Requesting Preliminary Injunction and a Temporary Restraining Order." (Doc. 12.) Seven days later, Plaintiff filed his Motion again, adding four pages that were apparently missing from the original motion, and exhibits. (Doc. 16.) Defendants Corizon and Tucker filed a Response to Plaintiff's Motions (Doc. 25) and Defendants Pratt and Ryan filed a separate Response (Doc. 31). Plaintiff filed a Reply in support of the Motions. (Doc. 36.) Plaintiff has also filed a "Motion Requesting Appointment of Expert Witness to Assist/Preliminary Injunction and Temporary Restraining Order Hearing." (Doc. 39.)

**I.    Background**

    **A.    Complaint**

Plaintiff filed a Complaint seeking damages and asserting two Counts of the denial of constitutionally adequate medical care. (Doc. 1.) In Count I, Plaintiff alleged that his

Eighth Amendment rights were violated when he was denied immediate treatment for a fractured tibia in May 2012. Plaintiff did not receive an MRI until July 3, 2012, which showed "an incomplete transverse fracture through the medial tibial," and Plaintiff did not receive the results of the MRI until a visit with an orthopedic surgeon on November 15, 2012. (Doc. 1 at 9-10.) As a result of the lack of immediate treatment, Plaintiff avers that he has suffered permanent injury and continuing pain.

In Count II, Plaintiff alleged that his Eighth Amendment rights were violated when, on multiple occasions, he did not receive prescribed pain medication. Plaintiff alleged that on June 18, 2013, his prescription medications Gabapentin and Propranolol were abruptly discontinued for three months because Defendant Mahler failed to renew those prescriptions and failed to give Plaintiff's chart to the healthcare provider. Plaintiff also claimed that Mahler refused to arrange for Plaintiff to see a healthcare provider for pain management issues. Plaintiff alleged that on September 18, 2013 Defendant Tucker abruptly discontinued Plaintiff's Baclofen 60 mg daily and reduced his Gabapentin from 3200 mg daily to 600 mg, even though both were prescribed for "neurovascular compromise, muscle spasms for the fracture[d] tibia that was never treated." (Doc. 1 at 18.) Plaintiff's Tramadol 50 mg twice daily for pain management related to an eye condition was stopped on November 5, 2013 and his Gabapentin 600 mg daily was stopped "cold turkey" on January 16, 2014 and has not been renewed. (*Id*.) Plaintiff saw an outside eye specialist on January 14, 2014, who wrote a prescription for Tramadol 300 mg twice daily for pain management, but Defendant Tucker refused to prescribe this medication for Plaintiff.

The Court determined that Plaintiff's allegations sufficiently stated a claim and ordered Defendants Ryan, Pratt, Wexford, Merchant, and Mahler to answer the allegations in Count I and Defendants Ryan, Pratt, Corizon and Tucker to answer the

allegations in Count II. (Doc. 6.) The Court dismissed the remaining Defendants without prejudice.[1]

### B. Motions for Preliminary Injunction and Temporary Restraining Order

In his two Motions, Plaintiff alleges that he has been deprived of the following: (1) "adequate pain management medication(s)" ("Baclofen 60 mg daily, Tramadol 300 mg daily, and Gabapentin 3200 mg daily"), which were "suddenly discontinued without explanation"; (2) physical therapy for his fractured tibia; (3) four consultations that were denied by Corizon in the past fifteen months; (4) supportive walking shoes with custom orthotics; and (5) an evaluation by a neurosurgeon in order to have an electromyography and nerve conduction test ("EMG/NCV") for "nerve damage from [Plaintiff's] untreated fracture[d] tibia." (Doc. 16 at 2-3.)

Plaintiff seeks an order from the Court compelling Defendants Ryan, Pratt and Corizon to provide Plaintiff with the following: (1) pain management medications (Tramadol 300 mg daily, Gabapentin 3200 mg daily, and Baclofen 60 mg daily); (2) a support cane; (3) physical therapy twice a week for 120 days; (4) medical ice as needed; (5) supportive walking shoe(s) and custom orthotics; (6) an appointment to see a podiatrist; (7) an appointment to see a neurosurgeon to have an EMG/NCV test performed, as well as a CT scan or MRI; (8) and a knee brace. (Doc. 16 at 19-21.) Plaintiff also seeks an order requiring Librarian R. Padilla and Paralegal Uliberry, who are not named as Defendants in this case, "to stop den[y]ing Plaintiff meaningful access to this Court with their interference with regards to legal photocopies." (*Id*. at 20.)

## II. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*,

---

[1] The Court also found that Plaintiff had stated a claim against Defendant Nurse Doe but did not order service on the unidentified Defendant. In a subsequent Order, the Court ordered that Josh Santos be substituted for Defendant Nurse Doe in Count I of the Complaint and that Santos answer Count I. (Doc. 51.)

- 3 -

520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right").  A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another."  *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test."  *See Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).  Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff."  *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm.  18 U.S.C. § 3626(a)(2).

**III. Analysis**

    **A.     Photocopies**

Plaintiff seeks injunctive relief against Librarian R. Padilla and Paralegal Uliberry in the form an order that they "make legal photocopies without hindering/delay as long as

- 4 -

1  [P]laintiff's signature is submitted on a[n] 'Inmate Request for Withdrawal' form."  (Doc.
2  16 at 5.)  Padilla and Uliberry are not parties to this action.  Ordinarily, the Court cannot
3  issue an injunction dealing with individuals and matters outside of the claim at issue.  *See*
4  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

5  An exception to that rule arises where the injunctive relief sought is related to
6  access to the courts.  *See Prince v. Schriro, et al.*, CV 08-1299-PHX-SRB, 2009 WL
7  1456648, at *4 (D. Ariz. May 22, 2009) ("a nexus between the preliminary relief and the
8  ultimate relief sought is not required") (citing *Diamontiney v. Borg*, 918 F.2d 793, 796
9  (9th Cir. 1990)).  Plaintiff's allegations concerning interference with his access to the
10 court may therefore be addressed.

11 The constitutional right of access to the courts is only a right to bring petitions or
12 complaints to the federal court and not a right to discover such claims or even to litigate
13 them effectively once filed with a court.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996);
14 *see also Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995).  To maintain an access-to-
15 the-courts claim, an inmate must submit evidence showing an "actual injury" resulting
16 from the defendant's actions.  *See Lewis*, 518 U.S. at 349.  With respect to an existing
17 case, the actual injury must be "actual prejudice . . . such as the inability to meet a filing
18 deadline or to present a claim."  *Id.* at 348-49.

19 Plaintiff alleges that he has been "frustrated or kept from pursuing a nonfrivolous
20 First Amended Complaint" and that Uliberry's statement to him about being a "jail-house
21 lawyer" has "discouraged" him from taking more aggressive steps to receive copies of
22 any First Amended Complaint."  (Doc. 16 at 4-5.)  These allegations do not evidence any
23 actual injury.  Indeed, the docket reflects that Plaintiff has filed several motions and
24 notices since filing his Motion for a Preliminary Injunction, including a Motion to File a
25 First Amended Complaint.  (*See* Docs. 34, 36, 37, 39, 42, 46, 47, 49.)  Accordingly,
26 Plaintiff's request for an order that Librarian R. Padilla and Paralegal Uliberry "stop
27 den[y]ing Plaintiff meaningful access to this Court with their interference with regards to
28 legal photocopies" is denied.

- 5 -

**B.     Medical Care**

The Court finds that injunctive relief regarding Plaintiff's medical care is inappropriate at this time because Plaintiff fails to establish that he is likely to succeed on the merits of his claim or that he faces imminent irreparable injury absent an injunction.

To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. This second prong is met if the prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's medical need and (2) harm caused by the indifference. *Id.* However, "a mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted).

Plaintiff alleges that in September 2013, Defendant Tucker abruptly discontinued his Baclofen prescription and "drastically altered" his Gabapentin prescription from 3200 mg to 600 mg daily. (Doc. 1 at 18.) He further alleges that in November 2013 his Tramadol prescription was "stopped cold turkey," that his Gabapentin was not renewed after January 2014, and that his Tegretol prescription was "stopped cold turkey" for six days in November 2013 and again for six days in December 2013. (*Id.*)

In response, Defendants present evidence that while Plaintiff was prescribed Baclofen, a muscle relaxant, for a period of time, it is not approved for use in treating musculoskeletal pain such as Plaintiff's and common practice in the medical community

- 6 -

is to not prescribe narcotic muscle relaxants such as Baclofen to treat long-term chronic pain because they are highly addictive and lose their effectiveness over time.  (Doc. 25, Ex. A ¶ 26.)  As for Plaintiff's Gabapentin allegations, Defendants assert that Defendant Tucker tried several different combinations of medications to treat Plaintiff's pain and re-started Plaintiff on Gabapentin at 600 mg in September 2013, at Plaintiff's request, because Plaintiff reported that the Tramadol gave no relief, but that Gabapentin gave him some relief.  (Doc. 25 at 8; Ex. A ¶ 25.)  Defendants further assert that between October and December 2013, Plaintiff was taking Tegretol, Pamelor, Tramadol (until Nov. 6, 2013), and Gabapentin.  (Doc. 25, Ex. A ¶ 27.)  In January 2014, however, Plaintiff's Gabapentin was discontinued because Plaintiff reported that he no longer received relief from Gabapentin, and Tucker then planned to start Plaintiff on Naprosyn to attempt to relieve his pain.  (*Id*. ¶ 28.)

As to Plaintiff's allegations regarding Tramadol, Defendants present evidence that in January 2014, Dr. Heller recommended Tramadol for Plaintiff's degenerative eye disease, keratoconus, a condition not normally associated with pain.  (*Id*. ¶¶ 30-31.)  Plaintiff had subsequent visits to Dr. Heller in February and April 2014, but Plaintiff did not complain of eye pain during those visits and Heller did not repeat the Tramadol recommendation on either of those visits.  (*Id*. ¶ 30.)  Further, Plaintiff did not complain to Tucker about eye symptoms following Dr. Heller's Tramadol recommendation, and Tucker did not prescribe Tramadol because it presents problems in a prison setting, is addictive, and because, in January 2014, Plaintiff was already taking Gabapentin (until January 10, 2014), Tegretol, and Pamelor for pain.  (*Id*. ¶ 31.)  Later, in May 2014, Plaintiff reported no relief with Naprosyn and requested Gabapentin and Tramadol, and so Tucker discontinued the Naprosyn and Pamelor and "submitted a non-formulary drug request for Gabapentin and Tramadol for pain."  (*Id*. ¶ 34.)

As to Plaintiff's other requests, Plaintiff received a knee brace in April 2013 and Defendant Tucker submitted a consult for medical shoes in May 2014.  (*Id*. ¶¶ 5, 16, 34.)  Tucker noted during the May 2014 visit that Plaintiff's symptoms "alluded to plantar

fasciitis/bursitis," and that Plaintiff "was amenable to attempting medical shoes first rather than orthotics." (*Id*. ¶ 34.) Plaintiff was also provided information on exercises for plantar fasciitis. (*Id*.) Tucker contends that a podiatric consultation is not necessary at this time while they "exhaust[] conservative measures[.]" (*Id*.) Plaintiff did submit a health care request for a cane in May 2013, but Tucker "has always noted" Plaintiff "to have normal gait and no distress with ambulation" and so a cane "would not be necessary for his current health status." (*Id*. at 32.)

In addition, Defendants present evidence that Plaintiff's fractured tibia has "completely healed" and that his pain is likely due to pes bursitis caused by tightness in the hamstrings. (*Id*. ¶¶ 13, 28.) On July 24, 2014, Plaintiff met with Dr. John Vanderhoof, an outside orthopedist, who noted that Plaintiff's pain complaints were consistent with pes bursitis and that x-rays revealed mild degenerative joint disease of the left knee and that his left foot x-ray was negative. (*Id*. ¶ 36.) Dr. Vanderhoof recommended "aggressive physical therapy and some anti-inflammatories." (*Id*. ¶ 36.) Plaintiff had his first physical therapy appointment on July 29, 2014, and the physical therapist recommended 6-8 follow-up visits. (*Id*. ¶ 37.) On July 31, 2014, Tucker "made a consultation request for 6-8 more" physical therapy visits, and on August 5, 2014, Tucker prescribed a trial of Indocin for Plaintiff's chronic pain. (*Id*. ¶¶ 37-38.)

Finally, Defendants present evidence that Plaintiff has not "presented any motor or sensation defects on examination," making a consultation with a neurosurgeon unnecessary. (*Id*. ¶ 35.)

The Court finds that on this record, Plaintiff cannot establish a likelihood that he will succeed on his deliberate indifference claim. The record at this juncture establishes, at most, a disagreement about how to treat Plaintiff's symptoms, and that is insufficient to establish a constitutional violation. *Toguchi*, 391 F.3d at 1058.

Accordingly Plaintiff's Motions Requesting a Preliminary Injunction and a Temporary Restraining Order are denied.

///

### IV. Motion to Appoint Expert

In his Motion, Plaintiff asserts that appointment of an orthopedic surgeon as an expert is warranted because of the "botched" diagnosis of his leg injury and because of the subsequent "indifference to his serious pain and illness." (Doc. 39 at 2-3.) In civil cases, the Court has the discretion to appoint expert witnesses, with the expert's fees to be allocated pursuant to court order as provided by Rule 706(c). Under Rule 706, experts are properly appointed in the court's discretion to assist the trier of fact in evaluating contradictory or complex evidence. *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (independent expert appointed to assist court in evaluating conflicting evidence of elusive disease of unknown origin); *McKinney v. Anderson*, 924 F.2d 1500, 1510-11 (9th Cir. 1991) (noting court's discretion to appoint expert in case involving complex scientific issues concerning effects of secondary cigarette smoke), vacated on other grounds, *Helling v. McKinney*, 502 U.S. 903 (1991). But appointment is not appropriate for the purpose of assisting a litigating party for his own benefit. *See Carranza v. Fraas*, 763 F. Supp. 2d 113, 119-20 (D.D.C. 2011); *Pedraza v. Jones*, 71 F.3d 194, 198 n.5 (5th Cir. 1995).

Plaintiff has not shown issues of requisite complexity requiring appointment of an expert witness. Plaintiff appears to make this request for his own assistance, which is outside the scope of Rule 706. Moreover, Rule 706 contemplates that an expert will be paid by the parties, but Defendants would be required to bear the entire cost because Plaintiff is proceeding in forma pauperis. It is not appropriate or equitable to require Defendants to bear the burden of paying an expert witness to present Plaintiff's point of view. Finally, the Court does not find the medical issues presented to be sufficiently complex, thereby necessitating an expert. *See Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997) (deliberate indifference toward prisoner's medical needs "did not demand that the jury consider probing, complex questions concerning medical diagnoses"). Accordingly, Plaintiff's Motion Requesting Appointment of an Expert is denied.

/ / /

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motions "Requesting Preliminary Injunction and a Temporary Restraining Order" (Docs. 12 and 16) and Plaintiff's "Motion Requesting Appointment of Expert Witness to Assist/Preliminary Injunction and Temporary Restraining Order Hearing" (Doc. 39).

(2) Plaintiff's Motions "Requesting Preliminary Injunction and a Temporary Restraining Order" (Docs. 12 and 16) are **denied**.

(3) Plaintiff's "Motion Requesting Appointment of Expert Witness to Assist/Preliminary Injunction and Temporary Restraining Order Hearing" (Doc. 39) is **denied**.

Dated this 23rd day of February, 2015.

*David G. Campbell*
David G. Campbell
United States District Judge